UNITED STATES v. MUNDAY et al.

(Circuit Court, W. D. Washington, N. D. April 6, 1911.)

No. 1,921.

1. CONSPIRACY (§ 23*)—ELEMENTS OF OFFENSE—FEDERAL STATUTE.

The elements of a criminal conspiracy under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), are: (1) An object to be accomplished, which must be either the commission of an offense against the United States or to defraud the United States; (2) a plan or scheme embodying means to accomplish the object; (3) an agreement or understanding between two or more persons whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the scheme, or by any effectual means; and (4) an overt act by one or more of the conspirators to effect the object of the conspiracy.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 30-39; Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454-1461; vol. 8, p. 7613.]

2. MINES AND MINERALS (§ 34*)—ENTRIES OF ALASKA COAL LANDS—TRANSFER OF RIGHTS—STATUTES.

Act April 28, 1904, c. 1772, 33 Stat. 525 (U. S. Comp. St. Supp. 1909, p. 556), amending Act June 6, 1900, c. 796, 31 Stat. 658 (U. S. Comp. St. 1901, p. 1441), extending the coal land laws to the district of Alaska, by section 1 provides that "any person or association of persons qualified to make entry under the coal land laws of the United States who shall have opened or improved a coal mine or coal mines on any of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

unsurveyed public lands of the United States in the district of Alaska may locate the lands on which such mine or mines are situated in rectangular tracts, containing 40, 80 or 160 acres * * * by marking the four corners thereof with permanent monuments," and shall within one year after such location file a notice thereof in the Land Office. Section 2 provides that "such locator or locators, or their assigns who are citizens of the United States shall receive a patent to the lands located" on application therefor within three years, giving prescribed notices, furnishing proof of the same, "and such other proof as is required by the coal land laws" and the payment of $10 per acre. Section 4 provides that "all the provisions of the coal land laws of the United States not in conflict with the provisions of this act shall continue and be in full force in the district of Alaska." *Held*, that the provision of Rev. St. § 2350 (U. S. Comp. St. 1901, p. 1441), a part of the coal land laws, that "the three preceding sections shall be held to authorize only one entry by the same person or association of persons," was not imported into the Alaska statute, being limited by its terms to entries made under the three preceding sections, and that under the Alaska statute a person who has opened or improved a coal mine and located a claim as therein provided may lawfully sell the same, and his vendee is entitled to receive the patent on compliance with the statute as to notice, proof, and payment; the only limitation on such right being that the vendee must be a citizen of the United States or an association of citizens.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 81–86; Dec. Dig. § 34.*]

3. CONSPIRACY (§ 43*)—INDICTMENT—FEDERAL STATUTE.

An indictment averring that defendants conspired to defraud the United States of coal lands in Alaska by inducing persons to locate and acquire title to claims thereon under the statute to be later transferred to a corporation, so as to enable it to thereby acquire a greater quantity of coal land than allowed by law, and that defendants, pursuant to such conspiracy, aided such claimants in making proof and payment for their lands, is insufficient to charge the crime of conspiracy to defraud the United States under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), where it does not show that the claimants were dummies, but avers that they were qualified to make the entries, and does not charge that they did not fully comply with the law to entitle them to make proof and obtain patents.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

4. WORDS AND PHRASES—"DUMMY."

In land office practice dummies are either fictitious persons, or those who, having no interest in the transaction, permit the use of their names for the perpetration of a fraud and sign papers and make affidavits perfunctorily.

Criminal prosecution of Charles F. Munday, Archie W. Shiels, and Earl E. Siegley by indictment charging defendants with conspiracy by a scheme to fraudulently acquire coal lands in Alaska. Indictment quashed.

B. D. Townsend and S. R. Rush, Sp. Asst. Attys. Gen.

Blaine, Tucker & Hyland and Walter S. Fulton, for defendant Munday.

Kerr & McCord, for defendant Siegley.

Dorr & Hadley, for defendant Shiels.

E. C. Hughes, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HANFORD, District Judge. The government prosecutes the defendants by an indictment founded upon section 5440 of the Revised Statutes of the United States, charging them as criminal conspirators. A jury having been impaneled and sworn to try the case, counsel for the government made an opening statement, giving an outline of the facts which the government relies upon to sustain the charge. His statement, however, consisted of a mere reading of the indictment. After a witness had been called and sworn to testify, counsel for the defendants interposed an objection to the introduction of any evidence, on the ground, as they allege, that the indictment is insufficient to support a judgment adverse to their clients, and by argument supporting their objection they have presented the concrete question whether the conspiracy charged is criminal or innocent. In the consideration and decision of the question submitted, it will be assumed that the indictment is a fair and complete statement of the government's case; that is to say, it specifies the crime intended to be charged with definiteness and certainty, and contains a general outline of the chain of circumstances and the facts which the evidence to be offered will prove, or tend to prove.

## Elements of Criminal Conspiracy.

[1] The only crimes punishable under federal law are those defined by the laws enacted by Congress. Therefore it must be kept in mind that the prosecution in this case is for an alleged statutory crime. The elements of the crime of conspiracy under the laws of the United States are: (1) An object to be accomplished which must be (a) the commission of an offense against the United States; (b) to defraud the United States. (2) A plan or scheme embodying means to accomplish the object. (3) An agreement or understanding between two or more persons whereby they become definitely committed to co-operate for the accomplishment of the object by the means embodied in the scheme, or by any effectual means. (4) An overt act by one or more of the conspirators to effect the object of the conspiracy.

## The Indictment Analyzed.

The indictment names the three defendants on trial and one Algernon H. Stracey as the persons implicated in the conspiracy charged. King county, in the state of Washington, and the 1st day of May, 1905, are specified as the place and time of the formation of the alleged criminal combination.

The general charge of the indictment is that the four persons named, with divers other unknown persons, did unlawfully (omitting other adjectives) combine, confederate, and agree together to defraud the United States of America of the use and possession of, and title to, large tracts of valuable coal lands then and there part of the public domain of the United States, situated within the Kayak recording district of Alaska, being contiguous tracts and parcels of coal lands collectively and commonly known as the "Stracey group." The indictment specifies that the lands referred to were subject to location and entry under the coal land laws of the United States ap-

plicable to Alaska and subject to the several attempted locations and entries in a subsequent part of the indictment specified, except for the unlawful, fraudulent, false, feigned, and fictitious character of said. attempted locations and entries; and that the value of said lands is $10,000,000.

The indictment contains other specifications of the nature of the intended fraud, some of which, however, are comprehended within the general charge of the purpose to defraud the United States by divesting the government of its title to, and proprietary rights in, the coal lands designated, and therefore do not merit additional mention. Other specifications of fraud are to the effect that the scheme included interference with the administration of the land business of the United States by deceiving the officers and agents of the government, in order to induce them to approve the several locations and entries and issue patents conveying the title to the coal lands designated.

The gravaman of the charge is an unlawful conspiracy to obtain coal land in Alaska for the Alaska Development Company, a corporation of the state of Washington, and the Pacific Coal & Oil Company, reputed to be a corporation organized and existing under the legal authority of some foreign government, to wit, the Dominion of Canada or one of its provinces; the quantity of land so to be obtained for said corporations being in excess of the quantity which the law permits. The several tracts of coal land to be acquired pursuant to the alleged conspiracy are 40 in number, each being specifically described and identified as a coal claim bearing the name of the individual locator and claimant thereof and by a serial number and by the area thereof expressed in acres and fractions of an acre; each claim being approximately one-fourth of a section.

The plan or scheme embodying the means whereby the object of the alleged conspiracy was to be accomplished are set forth with particularity in articulated paragraphs which I have epitomized as follows: The objects and purposes of said unlawful conspiracy were to be furthered and effected by means of unlawful, fraudulent, false, feigned, and fictitious locations, notices of locations, preferential rights to purchase, applications to enter and purchase, and final entries and purchases under the coal land laws of the United States; by cunning persuasion and promises of pecuniary reward and other corrupt means persons severally qualified by law (except as stated) should be procured and induced to make the fictitious locations and fraudulent entries of said tracts of coal lands ostensibly for the exclusive use and benefit of themselves, respectively, but in truth and in fact for the use and benefit of the Alaska Development Company and the Pacific Coal & Oil Company. The possession of all of said coal lands was to be held and the use thereof enjoyed by persons ostensibly as the agents of and for the benefit of the individual claimants, respectively, but in truth and in fact as the agent of, and for the use and benefit of, said corporations. Each claimant should be induced, persuaded, and procured to support his unlawful location and fraudulent entry by affidavits regular in form but containing false representations;

that each of them, respectively, had opened and improved a coal mine and expended moneys in that behalf and staked out and located a coal claim, including within its boundaries said coal mines, and had taken and held possession of said coal claims and intended to purchase from the United States under and pursuant to the coal land law applicable to Alaska the tract of land so pretended to have been located. By said means, the officers of the United States having charge of public land matters should be deceived and induced to accept, file, and record notices of location and affidavits in the land office, and to segregate said coal lands from the public domain, and withdraw the same from public entry under any of the public land laws of the United States, and rights should thereby be acquired ostensibly for the benefit of the persons making such false affidavits, but, in fact, for the said corporations. Thereafter said coal land claimants, respectively, should hold and exercise their pretended and unlawful preferential rights to purchase said coal lands ostensibly for their own use and benefit, but in fact for the said two corporations. Thereafter said claimants should, in the form and manner provided by law, make applications to enter and purchase said coal lands ostensibly for their own use and benefit, but, in fact, for the said two corporations, and thereby the said corporations should receive and enjoy the benefits of a greater number of locations and entries of coal lands, and for a greater quantity of coal lands than allowed by law. The respective shares and interests of said Alaska Development Company and of said Pacific Coal & Oil Company in the fruits and benefits of the unlawful conspiracy were to be adjusted so that said Alaska Development Company should receive and enjoy the title, use, and value of all of said coal lands subject to a contract entered into between said two corporations prior to the transactions, and which was in full force and effect at and during all of the times mentioned, by which it was provided that, as between said corporations, the Pacific Coal & Oil Company should be entitled to take and hold possession of said coal lands, operate the mines thereon, and extract the coal therefrom, paying a royalty therefor to said Alaska Development Company, and have an option to purchase all of said coal lands within certain stated times and for certain stated prices.

Overt acts are charged, substantially, as follows: That after the formation of said unlawful conspiracy, and in pursuance of, and to effect its object, Archie W. Shiels, one of the defendants, did unlawfully on specified dates cause each of the said coal claims to be surveyed by a mineral surveyor of the United States. Said survey being intended for use in applications to enter and purchase the said coal claims by the respective claimants thereof, and thereafter in further pursuance of, and to effect the object of said unlawful conspiracy, the said Shiels did knowingly on specified dates file and cause to be filed in the office of the Surveyor General of the United States for Alaska each and all of the said official surveys and the field notes thereof. The indictment then sets forth in tabulated form a list of the claims surveyed with the dates on which the surveys were made and the filing dates; said claims being 40 in number and identified

by the names of the claimants as the same claims previously mentioned. The indictment then alleges a number of other overt acts in furtherance of and to consummate the conspiracy, indicating that the scheme was carried out to the extent of filing applications to purchase said claims by each of the locators and payment of the government's price to the officers of the local land office for the district of Alaska in which the lands are situated, and that in the transaction of said business the defendants or one of them acted as attorney or agent of all of the locators. The indictment alleges other transactions subsequent to the 1st day of January, 1910, including written communications referring to money advanced by the Pacific Coal & Oil Company for which security was to be taken in the form of mortgages to be executed by the several entrymen and payments of money to the receiver of the land office at Juneau in payment of the government price for a number of said coal claims. Finally, the indictment charges that on a specified date subsequent to January 1, 1910, one of the defendants paid to the receiver of the Land Office at Juneau the government price for 38 of said coal claims.

It is to be specially noted that the indictment does not charge that the several locators were dummies; on the contrary, it is expressly averred that they were each of them competent to make entries of coal lands in Alaska, and not disqualified except for particular reasons in the indictment specified, and it is not charged as one of those particular reasons that their locations were illegal because of any failure to do the things which the law makes essential to the acquisition of rights as locators of coal land, nor that more than one coal right was to be, or had been, exercised by any one locator. To avoid possible complications from the enactment of the Criminal Code which went into effect on the 1st day of January, 1910, counsel for the government voluntarily announced an abandonment by the government of the charges contained in the indictment of overt acts subsequent to that date as elements of the crime with which the defendants are charged.

### Provisions of the Statute Affecting Coal Claims in Alaska.

[2] For convenience of reference, I will use Pierce's Federal Code, being a compilation of all the statutes of the United States of a general and permanent nature in force March 4, 1907, with a supplement continuing the compilation to January 1, 1910. In this volume the coal land laws of the United States necessary to be considered in the determination of the question—whether the defendants intended or attempted to perpetrate a fraud—are set forth in a group in sections numbered consecutively from 10,044 to 10,054, inclusive; the same being an accurate reprint of the laws comprised in sections 2347 to 2352 of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1440, 1441), and in 31 U. S. Stat. at L. p. 658 (U. S. Comp. St. 1901, p. 1441), and in 33 U. S. Stat. at L. p. 525 (U. S. Comp. St. Supp. 1909, p. 556). Sections 10,044 to 10,049, inclusive, being identical with sections 2347 to 2352, inclusive, of the Revised Statutes, comprise the general coal land law of the United States enacted by Congress in the year 1873. Referring to the sections by the Code numbers, the statutes contain the following provisions:

Section 10,044 prescribes a rule for the acquisition from the government of coal lands being part of the public domain of the United States by cash entry. By said rule the right to make entries is limited to persons and associations whose qualifications are defined in the following words:

"Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above."

And the maximum quantity of coal land which may be entered by a single individual or an association is fixed, and the minimum price to be paid therefor is also fixed.

Section 10,045 provides for a preference right of entry in favor of any person or association of persons severally qualified as provided in the preceding section who have opened and improved or shall open and improve any coal mine or mines on the public lands and shall be in actual possession of the same, and further provides that, when any association not less than four persons severally qualified as above shall have expended not less than $5,000 in working and improving any such mine or mines, such association may enter not exceeding 640 acres, including such mining improvements.

Section 10,046 relates to the presentation of claims for preferential rights and details of procedure to secure the same.

Section 10,047 reads as follows:

"The three preceding sections shall be held to authorize only one entry by the same person or association of persons; and no association of persons any member of which shall have taken the benefit of such sections, either as an individual or as a member of any other association, shall enter or hold any other lands under the provisions thereof; and no member of any association which shall have taken the benefit of such sections shall enter or hold any other lands under their provisions; and all persons claiming under section twenty-three hundred and forty-eight shall be required to prove their respective rights and pay for the lands filed upon within one year from the time prescribed for filing their respective claims; and upon failure to file the proper notice, or to pay for the land within the required period, the same shall be subject to entry by any other qualified applicant."

Section 10,048 relates to conflicting claims upon coal lands on which improvements shall have been commenced.

Section 10,049 is a saving clause of rights which may have attached prior to the enactment of the law.

Section 10,050 is the act of Congress approved June 6, 1900 (31 Stat. 658), extending to the district of Alaska so much of the public land laws of the United States as relate to coal lands, namely, sections 2347 to 2352, inclusive, of the Revised Statutes.

Sections 10,051–10,054, inclusive, comprise the act of Congress approved April 28, 1904 (33 Stat. 525), entitled, "An act to amend an act entitled 'An act to extend the coal land laws to the district of Alaska,' approved June sixth, nineteen hundred," which reads as follows:

"10,051. That any person or association of persons qualified to make entry under the coal land laws of the United States, who shall have opened or improved a coal mine or coal mines on any of the unsurveyed public lands of the United States in the district of Alaska, may locate the lands upon which

such mine or mines are situated, in rectangular tracts containing forty, eighty, or one hundred and sixty acres, with north and south boundary lines run according to the true meridian, by marking the four corners thereof with permanent monuments, so that the boundaries thereof may be readily and easily traced. And all such locators shall, within one year from the passage of this Act, or within one year from making such location, file for record in the recording district, and with the register and receiver of the land district in which the lands are located, or situated, a notice containing the name or names of the locator or locators, the date of the location, the description of the lands located, and a reference to such natural objects or permanent monuments as will readily identify the same.

"10,052. Sec. 2. That such locator or locators, or their assigns, who are citizens of the United States, shall receive a patent to the lands located by presenting, at any time within three years from the date of such notice, to the register and receiver of the land district in which the lands so located are situated an application therefor, accompanied by a certified copy of a plat of survey and field notes thereof, made by a United States deputy sur-.veyor or a United States mineral surveyor duly approved by the Surveyor General for the district of Alaska, and a payment of the sum of ten dollars per acre for the lands applied for; but no such application shall be allowed until after the applicant has caused a notice of the presentation thereof, .embracing a description of the lands, to have been published in a newspaper in the district of Alaska published nearest the location of the premises for a period of sixty days, and shall have caused copies of such notice, together with a certified copy of the official plat or survey, to have been kept posted in a conspicuous place upon the land applied for and in the land office for the district in which the lands are located for a like period, and until after he shall have furnished proof of such publication and posting, and such other proof as is required by the coal-land laws: Provided, that nothing herein contained shall be so construed as to authorize entries to be made or title to be acquired to the shore of any navigable waters within said district.

"10,053. Sec. 3. That during such period of posting and publication, or within six months thereafter, any person or association of persons having or asserting any adverse interest or claim to the tract of land or any part thereof sought to be purchased shall file in the land office where such application is pending, under oath, an adverse claim, setting forth the nature and extent thereof, and such adverse claimant shall, within sixty days after the filing of such adverse claim, begin an action to quiet title in a court of competent jurisdiction within the district of Alaska, and thereafter no patent shall issue for such claim until the final adjudication of the rights of the parties, and such patent shall then be issued in conformity with the final decree of such court therein.

"10,054. Sec. 4. That all the provisions of the coal land laws of the United States not in conflict with the provisions of this act shall continue and be in full force in the district of Alaska."

The statute comprised in these four quoted sections is specially applicable to Alaska, and was enacted by Congress to meet an urgent demand, amounting to necessity and because the previous statute of June 6, 1900, extending the general coal land law of the United States to Alaska, was impracticable because conditions made it impossible to acquire any rights under it by compliance with its requirements.

In a letter addressed to the registers and receivers in the district of Alaska, dated June 27, 1900, the Commissioner of the General Land Office announced the enactment of this law, and explained that under sections 2347 to 2352, inclusive, of the Revised Statutes, which the act purported to extend to Alaska, coal land filings and entries must be by legal subdivisions as made by the regular United States survey, and that under section 2401 of the Revised Statutes as amend-

ed by the act of August 20, 1894 (U. S. Comp. St. 1901, p. 1477), no application for a special survey shall be granted unless the township proposed to be surveyed is within the range of the regular progress of the public surveys embraced by existing standard lines or bases for township and subdivisional surveys, and that, as no township or subdivisional surveys have been made nor any standard lines or bases for township and subdivisional surveys established within Alaska, therefore until the filing in the local land office of the official plat of survey of a township, no coal filing nor entry can be made. This was, in fact, an official declaration of the attempt, and failure of Congress to make provision by a practicable law for the acquisition by individuals and associations of rights in and to coal lands in Alaska.

Instead of attempting to state the provisions of the law of 1904 in different phraseology, I have quoted it because it is the opinion of the court that it is not in any particular ambiguous. It means what the words selected by Congress express according to the common and general understanding of people accustomed to use the English language. It needs not to be construed, and there is no authority to interpolate into its provisions restrictions and limitations of rights which it grants by judicial interpretation or construction. In the case of Newhall v. Sanger, 92 U. S. 765, 23 L. Ed. 769, Mr. Justice Davis said: "There is no authority to import a word into a statute in order to change its meaning."

By the arguments made it appears that this prosecution is founded in part at least upon a theory that the restrictions of section 10,047, above quoted, are to be deemed as being imported into the law of 1904. That contention is untenable, for the reason that by the express words of that section which I have quoted those restrictions apply only to persons and associations claiming or exercising rights under the three preceding sections, which were and are inapplicable to conditions in Alaska and never did have potential force there. The statute of 1904, applicable only to Alaska, is a declaration of the will of Congress subsequent to the act of June 6, 1900, extending the law of 1873 to Alaska, and therefore is the paramount law. The later law does not in words nor by reference to, and adoption of, the provisions of the older law, restrict persons or associations to a single exercise of the right granted to locate coal claims and secure patents therefor. The argument that section 10,047 must be read into the Alaska statute is that the right to locate is given only to persons and associations qualified to make entry under the coal land laws of the United States, and that these words exclude persons and associations having the qualifications prescribed, but disqualified by reason of having once exercised the right. By this argument there is interpolated into the statute words additional to and expressing a meaning different from the plain declaration of the law itself. The prescribed qualifications are age and citizenship. By the law of 1873 a person 21 years of age and a citizen of the United States is qualified to make an entry of coal land, and having the same qualifications, and having, also, opened or improved a coal mine on unsurveyed public land in Alaska, he is entitled to become a locator of a coal claim, including

the mine which he has opened or improved. This is so according to the letter of the law. And, having located a coal claim, he may sell it, and his vendee, if a citizen of the United States or an association composed of citizens, are entitled to receive a patent conveying the complete title from the government by compliance with the require-ments of section 10,052. To say that a vendee of a qualified locator to be entitled to receive a patent must be a citizen or association of citizens qualified as prescribed to make an entry of coal land, and not disqualified by having exercised a right to acquire coal land from the government, infringes legislative power, for in the guise of construc-tion a radical change in the law would be effected by the addition of requirements and restrictions which the lawmaking power did not put there. The words of the law are:

"That such locator or locators, *or their assigns, who are citizens of the United States*, shall receive a patent to the lands located by presenting. * * *"

By having made *citizenship* a requisite condition of the right to re-ceive a patent, the law makes *citizenship* the only requisite condition to the right. This is so by the rule declared by the Supreme Court in the words of Mr. Justice Davis above quoted, which is a fun-damental rule for the construction and interpretation of statutes. "Expressum facit cessare tacitum."

Congress intended to enact a practicable, workable law, and, if its second attempt to do so be not made futile by misconstruction, we have such a law. It is not a law made to serve the purpose of monopo-lists who would keep the coal of Alaska locked within her mountain walls, nor is it based upon any fantastic notion that trusts can be an-nihilated by giving coal rights to no one except the man who by per-sonal toil may dig the coal and carry it to market upon his back or upon his head. It is the duty of the court to not misconstrue the law, nor stigmatize the Congress which enacted it and the President, who ap-proved and signed it, by imputing to them a lack of either sense or honesty. This law by its words and intendment limits the rights of a qualified locator who has opened or improved a coal mine in Alaska by prescribing the maximum area and the form of the tract which he may secure by doing the things which the law exacts, and by making the opening or improving of a coal mine the initiatory step, and the marking of boundaries and corners and the posting and recording of notices essential to a valid location. These requirements necessitate expense and trouble, and it is not for the court to say that as restric-tions and limitations they are not sufficient. The responsibility of de-termining all such questions belongs to the legislative branch of the government. To become entitled to a patent, the locator or his assigns must publish and keep posted the notice prescribed by the second sec-tion of the act and furnish proof of such publication and posting, "and such other proof as is required by the coal land laws." We now look to the coal land laws to find what other proof must be furnished. We search the law to find what other proofs are required rather than regulations promulgated by departmental officers, because the words of the act refer to the law, and do not leave the locator, who has

opened and improved a coal mine, under the necessity of complying with the personal will of bureau officers authorized to change the regulations as often as they may think that they discover reasons for more exacting conditions. Section 10,047 of the Code contains this clause:

"All persons claiming under section twenty-three hundred and forty-eight shall be required to *prove their respective rights* and pay for the lands filed upon. * * *"

[3] This is undoubtedly the other proof referred to, and by the selection and adoption of that particular clause there is plainly manifested a definite purpose to not graft the other provisions of the same section upon the Alaska coal land laws. Locators of coal claims in Alaska under this law have the right to use business sense, to look ahead and make arrangements for working capital and to contract in advance for transportation facilities, and to sell or mortgage their claims. By mandatory words the law prescribes that the locator who meets the requirements prescribed shall receive a patent. He may sell his claim before obtaining the patent, and, if he does so, his vendee, if a citizen of the United States or an association of citizens, shall receive the patent. It is not to be inferred that the law will permit the acquisition of coal lands in Alaska through the medium of dummy entrymen. [4] In land office practice dummies are either fictitious persons, or those who, having no interest in the transaction, permit the use of their names for the perpetration of a fraud and sign papers and make affidavits perfunctorily. A man who opens or improves a coal mine in Alaska and locates a claim in the form prescribed by the statute, including his improvements, and marks its lines and corners so that its boundaries can be readily traced on the ground, and posts and records a notice in conformity to the requirements of the statute, and is then competent and entitled to deal with the claim as his own property, to sell it, lease it, mortgage it, or keep it, and derive for himself all the profits and benefits to be derived from the most advantageous use or disposition of such property, is not a dummy entryman.

This understanding of the law does not make it inconsistent with its title. It is an amendatory statute. It amends not by changing any provisions of previously enacted laws, but by making additions thereto especially applicable to local conditions in Alaska. This appears the more obvious when all of the laws affecting the acquisition of rights to coal lands are grouped in chronological order as they appear in Pierce's Federal Code.

Nothing is to be implied from the peculiar phraseology of the fourth and last section. By its words all the provisions of the coal land laws of the United States not in conflict with the provisions of this act shall continue and be in full force in the district of Alaska. This continues the existing status as to all the provisions of the coal land laws of the United States not in conflict with the new enactment. If there be conflicting provisions, the older enactments yield to the new. Provisions which do not conflict continue in force, and, when conditions shall be changed so that their requirements may be complied with, it will be legal and practicable to make cash entries and acquire preferential rights. A foreign corporation cannot lawfully acquire or hold

a. coal claim in Alaska either in its corporate name or in the name of any agent or trustee. Therefore, for the reason that the indictment charges a conspiracy to acquire coal claims or proprietary rights to coal claims in Alaska for a foreign corporation, it must be sustained as a valid indictment, and the objection to the introduction of evidence must be overruled. The court will, however, instruct the jury that, to justify a conviction of the defendants under it, the evidence must prove that the object of the conspiracy, if any, must have been to perpetrate a fraud by securing coal claims or proprietary rights in coal claims in Alaska for the Pacific Coal & Oil Company.

## Addenda.

After the announcement by the court of its decision and ruling on the objection to the introduction of evidence, as indicated in the foregoing opinion, in order to facilitate a review of the decision by the Supreme Court, the trial was terminated, pursuant to a stipulation, by and between counsel for the government and counsel for the several defendants, by the following proceedings:

(1) The government does now and here abandon for all time the charges in the indictment of the foreign or alien character of the Pacific Coal & Oil Company as an element of the crime sought to be charged by the indictment.

(2) Defendants now move the court that the indictment be quashed and that the defendants be discharged, upon the following grounds: (1) That the indictment in this case does not charge the defendants, or any of them, with any crime or offense against the United States, nor with the violation of any law of the United States. (2) That the said indictment does not charge the defendants, or any of them, with the crime or offense of conspiracy to defraud the United States. (3) That said indictment fails to allege the doing or committing of any overt act or acts by any of the defendants to effect the object of any conspiracy to defraud the United States.

This motion is based upon the general grounds that the laws of the United States regulating the disposition of coal lands in the district of Alaska during the times set forth in the indictment did not prohibit the transactions, or any of them, charged in the indictment, as contemplated by and a part of the alleged conspiracy therein set forth. In order to obviate any question of double jeopardy, and for the purpose of making the record in such form that a writ of error will lie to the Supreme Court in favor of the government, under Act March 2, 1907, c. 2564, 34 Stat. 1246 (U. S. Comp. St. Supp. 1909, p. 220), the government now moved that the court withdraw one of the jurors before ruling upon the motion just interposed on behalf of the defendants. The defendants and each of them, being personally present, consent to the withdrawal of the juror by the court, as requested by counsel for the government, and Mr. Funk, one of the jurors, is thereupon excused and withdrawn from the jury by the court.

PER CURIAM. The motion made on behalf of the defendants is granted by the court, the indictment is quashed, and the defendants are discharged. This ruling is based upon a construction of the coal

land laws of the United States applicable to the district of Alaska, and the grounds of the court's ruling are as set forth in the written opinion or opinions filed or to be filed herein.

Counsel for the government asks that an exception be noted to the ruling of the court, and the exception is allowed by the court.